JOSEPH SORTINO et al., Respondents, *v.* SIDNEY L. FISHER, Appellant.

First Department, December 10, 1963

*Thomas J. Cunningham* of counsel (*William P. Kennedy*, attorney), for appellant.

*Veit E. Kaufmann* of counsel (*Kaufmann & Friedmann*, attorneys), for respondents.

BREITEL, J. P. Defendant in a personal injury negligence action appeals from an order denying his motion to dismiss the complaint for failure to prosecute. The motion was made under the then section 181 of the Civil Practice Act (now CPLR 3216).

The accident occurred September 7, 1959, although both briefs refer to it as having occurred in 1957. The action was begun November 11, 1960, and issue was joined December 13, 1960. The last activity in the case prior to the present motion was when, on March 9, 1962, the examinations before trial were completed. Defendant moved to dismiss for neglect on August 28, 1962.

The accident involved a two-car intersection collision in Patchogue, Long Island. Plaintiff wife, a passenger in one of the automobiles, stated in her affidavit of merits that " I am informed that the light was green for us at all times ". Her injuries as described in the bill of particulars are bruises, abrasions and lacerations, together with the customary polysyllabic references to accompanying wide-ranging physical and

mental conditions. The husband, according to the bill, sustained a swelling and contusion on his chest.

The alleged excuse for delay is, first, that there was not too much delay since the examinations before trial were not completed until March 9, 1962 and, second, that plaintiffs were waiting for court consolidation to take effect on September 1, 1962 so that the case could be transferred to a court of lesser monetary jurisdiction instead of remaining in the Supreme Court. In resisting the motion to dismiss, plaintiffs offered to stipulate to transfer the action to the Civil Court of the City of New York and to notice it for trial immediately. Special Term in denying the motion referred to this offer.

The excuse for delay is insufficient, as is the affidavit of merits. As a consequence, the order should be reversed and the action dismissed. Because there is concurrently a substantial number of similar appeals and evident difficulty in understanding the principles applicable, comment is merited.*

In the first place, the newly-enacted rule 3216 of the Civil Practice Law and Rules is substantially similar to its predecessor section 181 of the Civil Practice Act.** The legislative history reveals that the purpose was not to make any change in the power and practice of the courts in controlling the flow of litigation by dismissing neglected actions. The legislative history also reveals that it was determined not to provide rigid and particularized grounds for dismissal in order to preserve the flexibility of existing practice and to enable " the court adequately to deal with the multifarious situations which might amount to want of prosecution and the numerous factors that might excuse a delay " (McKinney's Cons. Laws of N. Y., Book 7B, CPLR, rule 3216, Notes p. 839; 1st Preliminary Report, Advisory Comm. on Practice, N. Y. Legis. Doc., 1957, No. 6[b], pp. 101–103; see 4th Preliminary Report, Advisory Comm. on Practice, N. Y. Legis. Doc., 1960, No. 20, p. 194). It is not the present purpose to express any rigid standards where none existed before, but to describe the flexible, interrelated factors applied in recent years.

The overriding motivation for dismissing neglected actions is that court calendars are heavily burdened, especially certain

---

* Printed on pages 524–527 are memoranda in the appeals decided simultaneously with this. They are illustrative.

** Rule 3216 reads: " Want of prosecution. Where a party unreasonably neglects to proceed in the action against any party who may be liable to a separate judgment, the court, on its own initiative or upon motion, may dismiss the party's pleading on terms. Unless the order specifies otherwise, the dismissal is not on the merits."

calendars, and it is almost invariably true that neglected actions are of little or no merit. Even after being placed on the calendar, sometimes only to avoid dismissal for neglect, they are kept there to compel settlements. There, however, they serve to clog the calendars, and sometimes even to obtain help in settlement from harassed Judges who press to clear the calendars. Under the circumstances litigants with actively prosecuted cases possessing merit are entitled to the facilities of the courts rather than those actions which have been delayed and which possess little or no merit (cf. *Plachte* v. *Bancroft, Inc.,* 3 A D 2d 437, in which the use of the general preference as a control is discussed; see, *Lakowitz* v. *Marlin Gardens,* 5 A D 2d 981, app. dsmd. 6 N Y 2d 818, repeating the warning that the neglect rules would be strictly enforced). At the same time defendants are entitled to be free, after reasonable opportunity for plaintiffs to establish the contrary, of the burden of defending actions which possess little or no merit, or even of defending actions of merit but too long delayed. Thus, there have evolved a number of relevant factors. No one or any combination is conclusive. Courts are keenly aware of the heavy responsibility entailed in foreclosing cases of merit, and should do so only under constraint of justifying circumstances.

1. *Extent of Delay*

Any unreasonable delay, depending upon the nature of the case, the degree of merit, and the particular difficulties which the litigating plaintiff faced, may support dismissal. And for this purpose no particular period of avoidable delay is required; but with relation to the particular case it should be deemed substantial. In one case, to warrant dismissal, delay may be a matter of months and in another, years (see, e.g., *White* v. *Good Operating Corp.,* 19 A D 2d 802 [73 months' delay in negligence action]; *Noble* v. *Hayakawa,* 16 A D 2d 616 [20 months' delay in action on note]; *Hardware Mut. Cas. Co.* v. *Rosenberg,* 3 A D 2d 988 [14 months' delay on assigned personal injury action under Workmen's Compensation Law]; and, of course, rule 156 of the Rules of Civil Practice, omitted from the Civil Practice Law and Rules, entitled a defendant to move to dismiss the complaint after delay of six months from joinder of issue*). In determining whether delay is substantial the periods elapsing between date of accrual of cause of action, date when action was begun, and date when issue was joined are material in assessing how substantial is the delay following the last stir of activity. Thus,

* See 4th Preliminary Report, Advisory Comm. on Practice, N. Y. Legis. Doc., 1960, No. 20, p. 194, *supra,* for the reason for the omission.

while the last delay in this case is but five months, it is two and one-half years since joinder of issue and the action involves a 1959 accident.

### 2. *Law Office Failures*

Excuses for avoidable delay are insufficient which merely lay the delay at the door of plaintiff himself, his lawyer of record, trial counsel, other associated counsel, or employees of any of the lawyers (e.g., *Wilson* v. *Whitehall Hotel Corp.*, 20 A D 2d 525, decided herewith; *Maloney* v. *Springfield Development Co.*, 20 A D 2d 526, decided herewith; *Milligan* v. *Hycel Realty Corp.*, 20 A D 2d 527, decided herewith; *Burke* v. *City of New York*, 18 A D 2d 898; *Cronin* v. *City of New York*, 18 A D 2d 995; *Benjamin* v. *Chock Full of Nuts*, 18 A D 2d 906; *Waldman* v. *Cedar Mgt. Corp.*, 11 A D 2d 646; *Fischetti* v. *242 East 19th St. Corp.*, 4 A D 2d 867; *Moshman* v. *City of New York*, 3 A D 2d 825). Indeed, shifting the cause of avoidable delay from one to another does not make the neglect any the less. Besides, such shifting makes it too easy to avoid ultimate responsibility and too difficult to determine the actual cause of the delay.

### 3. *Settlement Negotiations*

That settlement negotiations have occurred between representatives for defendant and plaintiff is sometimes a reasonable excuse for not taking any particular action while the negotiations are pending. The excuse, however, ceases to have effect within a brief interval after the last communication (e.g., *Wilson* v. *Whitehall Hotel Corp.*, 20 A D 2d 525, *supra*, decided herewith; *Krell* v. *Pelham Syndicate*, 14 A D 2d 845; *Patron* v. *112 East 111th St. Corp.*, 14 A D 2d 843; *Trapani* v. *Samuels*, 3 A D 2d 861 [2nd Dept.], mot. for lv. to app. den. 3 N Y 2d 931; *Fast* v. *Meenan Oil Co.*, 1 A D 2d 889 [2nd Dept.]; *Mann* v. *Nednil Terrace Corp.*, 35 Misc 2d 182 [App. Term, 1st Dept.]; cf. *Maizonet* v. *Lee Properties*, 11 A D 2d 667).

### 4. *Other Pretrial Activity*

Pretrial activity in the nature of discovery proceedings and motion practice may be, of course, an excuse for not noticing the action for trial immediately (cf. *Carvel Dari-Freeze Stores* v. *Lukon*, 18 A D 2d 700, modfg. 219 N. Y. S. 2d 716 [MUNDER, J.], mot. for lv. to app. dsmd. 12 N Y 2d 1067; *De Long Corp.* v. *J. Rich Steers, Inc.*, 10 A D 2d 705). However, under the new rule with respect to the filing of statements of readiness in personal injury and death actions in negligence even this excuse does not suffice to justify any but a short delay (Supreme Court

Bronx and New York County Rules, part I, rule IV, subd. 4, par. [h]). Moreover, in such cases under the newer rules, the avoidable delay in filing a statement of readiness may become such neglect as will support dismissal of the action.

## 5. *Statute of Limitations*

That the Statute of Limitations may have run is a double-edged consideration. While it may be helpful sometimes in discounting delays, more often the running of the statute will re-enforce the view that the action should be dismissed (e.g., *Reilly* v. *Mirailh,* 20 A D 2d 526, decided herewith; *Smallen* v. *Sherman Sq. Hotel Corp.,* 20 A D 2d 527, decided herewith; *Mercer* v. *Portsmouth Associates,* 18 A D 2d 614; and many of the other short-statute tort cases cited herein in which the court did not comment on the obvious fact that the statute had run; contra, *Parshall* v. *Grand Leasing Corp.,* 17 A D 2d 953 [2nd Dept.]). Indeed, the statute is a legislative expression of policy fixing the time within which claims have become too stale for litigation. Surely this should be persuasive that even a claim put in litigation may have become too stale to litigate. The only saving difference may be that defendant knows he is being sued. Otherwise, the availability of physical evidence, the recollection of witnesses, and even the availability of witnesses, may have been seriously impaired by the lapse of time — a lapse intended to be measured by the applicable Statute of Limitations.

## 6. *Defendant's Duty*

In considering the duty of plaintiff to prosecute an action, it is rare, if ever, that recrimination may suffice as an excuse for delay, namely, that defendant was himself neglectful or neglected to press plaintiff to prosecute. It is not in the nature of most defenses or defendants for defendants to press for prosecution. The duty of prosecuting the action rests on the one who brings it, not on the one who defends it (*Reilly* v. *Mirailh,* 20 A D 2d 526, *supra,* decided herewith; *Hutnik* v. *Brodsky,* 17 A D 2d 808; *Balaka* v. *Stork Rest.,* 3 A D 2d 857 [2nd Dept.]; contra, *Carbonel* v. *Ocasio,* 41 Misc 2d 33, affd. 19 A D 2d 799 [2nd Dept.]). There may, of course, be exceptions.

## 7. *Plaintiff's Belated Activity*

Lastly, it is no excuse for plaintiff to become active on the eve of a motion to dismiss for neglect or to become active thereafter. For this reason the filing of a note of issue to place the action on the calendar is not, by itself, an excuse for the delay charged in the motion. This has been the rule for many years in this Department. (E.g., *Valentin* v. *Ina Holding Corp.,* 20

A D 2d 525, decided herewith; *White* v. *Good Operating Corp.,* 19 A D 2d 802, *supra; Miranda* v. *City of New York,* 13 A D 2d 723; *Lapidus* v. *City of New York,* 4 A D 2d 752 [2nd Dept.]; *Nigro* v. *City of New York,* 3 A D 2d 987; *Goldfarb* v. *Mallin,* 3 A D 2d 735, app. dsmd. 3 N Y 2d 979; *Giovannucci* v. *Brooklyn & Richmond Ferry Co.,* 278 App. Div. 861 [2nd Dept.].) Precedents may be found, to be sure, several decades old which, under the conditions of those times, took a different view (e.g., *Mladinich* v. *Livingston,* 112 App. Div. 181, 183; *United States Fid. & Guar. Co.* v. *Whitman,* 138 App. Div. 275. Compare *Fisher Malting Co.* v. *Brown,* 92 App. Div. 251). The rule, too, may be different elsewhere than in this Department (e.g., *Richardson* v. *Erie R. R. Co.,* 280 App. Div. 958 [4th Dept.]).

### 8. *Disabling Circumstances*

Thus far, proffered excuses not sufficient to justify delay have been discussed. There are circumstances beyond the control of plaintiff and his lawyer, including disabling personal catastrophies that may prevent quick recovery from the delays initiated by such catastrophies (e.g., *Wolf* v. *Associates Discount Corp.,* 12 A D 2d 241; *Zeiger* v. *Kew Towers,* 8 A D 2d 827 [2nd Dept.]. Cf. *Keenan* v. *Waring,* 12 A D 2d 601). There may be time-consuming procedures in the litigation, such as the taking of deposition in foreign countries under difficult circumstances, or extended investigation of critical facts, which may explain or justify delay. And, of course, delays in which defendants are directly involved or contributory may excuse delay (e.g., *Rosenstein* v. *Rothenberg,* 9 A D 2d 663; *Barnard* v. *Postle,* 12 A D 2d 670; cf. *Gonzalez* v. *Rosenblatt,* 13 A D 2d 770).

### 9. *Parallel Litigation*

There may be parallel litigation which should be determined before the instant action is prosecuted (e.g., *De Long* v. *J. Rich Steers, Inc.,* 10 A D 2d 705, *supra;* but cf. *Grottano* v. *New York Herald Tribune,* 13 A D 2d 638).

There are undoubtedly other good and sufficient excuses for delay.

### 10. *Affidavit of Merits*

It was earlier noted that there is an intimate relationship between the merit of an action and the fact that it has been neglected. It is for this reason that in defending a proper

motion to dismiss for neglect it is essential that plaintiff supply an affidavit of merits. Such affidavit, by the party or another person with knowledge of the facts, must contain evidentiary facts establishing that plaintiff has a viable cause of action. It must be as good as the kind of affidavit which could defeat a motion for summary judgment on the ground that there is no issue of fact (e.g., *Gallagher* v. *Clafington, Inc.,* 7 A D 2d 627, and cases cited; *Milligan* v. *Hycel Realty Corp.,* 20 A D 2d 527, *supra,* decided herewith; see Tripp, A Guide to Motion Practice [rev. ed.], § 20, especially cumulative supp. 1955–1962).

The affidavit of merits is important, not only to show that plaintiff has a viable cause of action, but also because the degree of merit is always revealing on whether there has been a deliberate neglect of an action of little or no value, or whether the delay has another explanation. So, too, where plaintiff is the representative of a deceased person or of one incompetent to make his own affidavit, there must still be merit shown by evidentiary facts. Then the evidentiary facts will not be available from the principal actors but, in the very logic of the situation, must be available somewhere or somehow, in the same manner by which plaintiff expects to prove his case upon a trial (e.g., *Swirsky* v. *Emanuel Arms,* 20 A D 2d 524, decided herewith; *Cavac Compania, etc.* v. *Stanley,* 12 A D 2d 461).

To be sure, plaintiff has no burden to establish merit unless there has been delay. Given delay, he has a double burden: to justify the delay and to lend credit to the proffered justification by establishing merit. It stands to reason that the greater the merit of the case the more excusable the delay and the greater would be the injustice of dismissal. So, a short delay may still require a showing of merit, but not nearly as much as a longer delay. The more slender the excuse for the delay, the greater the need to establish merit. On the other hand, ample explanation for the delay requires less of a showing of merit, although still a showing. The key, to repeat, is that the delayed action is an action suspect as to its merits. Hence, the need both to explain the delay and develop the merits. And, of course, in this complex of factors, prejudice to defendant is material, but not essential (*White* v. *Good Operating Corp.,* 19 A D 2d 802, *supra*; *Coban* v. *Wil-Sade Realties,* 19 A D 2d 605; *Garcia* v. *Sentry-Norden Oil & Heating Co.,* 18 A D 2d 789; semble contra, *Keller* v. *National Auto Renting Co.,* 10 A D 2d 578 [2nd Dept.]).

But there should be no misunderstanding. Even an action of great merit may be forfeited by prolonged delay. It is the right of a defendant to be free of a case which is not diligently

prosecuted. (*Hoffman* v. *Cafariella,* 20 A. D. 2d 524, decided herewith.) For obvious reasons, it is very rare and quite perverse that an action of merit is not diligently prosecuted.

It might be said that on the foregoing analysis it is difficult to overcome the effect of an avoidable delay. The inference would be quite correct. And this is as it should be. One who imposes on a defendant the burden and expense of litigation has assumed a serious responsibility. One who would claim time from heavily-burdened and costly judicial facilities has an even greater responsibility. Nowhere is there reason or occasion to create opportunities for the nuisance action, the nuisance settlement, or the strike action.

It must be repeated that there is no intention and there is no occasion to lay down rigid rules or particularize the circumstances controlling the determination of motions to dismiss for failure to prosecute. The varying of the circumstances is too great. But general principles which have influenced the court are properly, and, apparently, necessary to be indicated.

The present case is illustrative of some of the factors discussed. The action was not brought until a year after the accident. It then wended its leisurely way until the Spring of 1962, after which plaintiffs rested on their oars for about a half-year, a period too long in the light of the lack of merits and the lapse of time since joinder of issue. The excuse supplied, concerning transfer to the Civil Court, assuming credibility, is all but irrelevant (see *Nelson* v. *Sindos Realty Corp.,* 19 A. D. 2d 604). The answer to the neglect is found in the triviality of the injuries sustained in this accident of four years ago. Moreover, the affidavit of merits contains nothing but hearsay reference to the traffic lights without stating who it is that says the lights were green and is ready to so swear upon the trial. In sum, the excuse, for this delay of more than two and a half years since joinder of issue is insufficient and the affidavit of merits is completely inadequate.

Accordingly, the order denying defendant's motion to dismiss plaintiffs' action for failure to prosecute should be reversed on the law, the facts, and in the exercise of discretion, with costs, and the motion granted, with costs.

RABIN, VALENTE, STEVENS and BERGAN, JJ., concur.

Order, entered on October 9, 1962, unanimously reversed, on the law, on the facts, and in the exercise of discretion, with $20 costs and disbursements to appellant, and the motion granted, with $10 costs.